UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
YOLANDA BEJASA-OMEGA,       Docket No.:  07 Civ. 2950 (LLS)
                  Justice:   Hon. Louis L. Stanton
           Plaintiff,

       -*v.*-

PV HOLDING CORP. and RONALD M. SKLON,  ***N O T I C E  O F  M O T I O N***

          Defendants.
--------------------------------------------------------------------X

    **PLEASE TAKE NOTICE** that upon the annexed ***AFFIRMATION OF MATTHEW SAKKAS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY*** and the exhibits annexed thereto, dated December 19, 2007, and all the pleadings and proceedings heretofore had herein, the undersigned will move this Court at 500 Pearl Street, Room 2250, New York, NY, on January 11, 2008 at 9:30 AM, or as soon thereafter as Counsel may be heard, for an Order:

    1.  pursuant to FRCP 56(a) granting the plaintiff summary judgment on the issue of liability; and

    2.  amending the caption of this action so as to accurately reflect the status of the parties; and

    3.  granting any such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        December 19, 2007

                                        S A K K A S   &   C A H N ,   L L P


                                By:  _____
                                     MATTHEW SAKKAS, ESQ. (WMS 3351)
                                     Attorney for Plaintiff
                                     150 Broadway, Suite 1307
                                     New York, N.Y.  10038
                                     Tel:    (212)693-1313
                                     Fax:    (212)693-1314

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

YOLANDA BEJASA-OMEGA,                              Docket No.:      07 Civ. 2950 (LLS)
                                                  Justice:      Hon. Louis L. Stanton
                              Plaintiff,

                                                  *AFFIRMATION OF MATTHEW*
              -*v*.-                              *SAKKAS IN SUPPORT OF*
                                                  *PLAINTIFF'S MOTION FOR*
PV HOLDING CORP. and RONALD M. SKLON,             *SUMMARY JUDGMENT ON THE*
                                                  *ISSUE OF LIABILITY*
                              Defendants.

----------------------------------------------------------------------X


            MATTHEW SAKKAS, an attorney duly admitted to practice law before this

Court, affirms to the truth of the following, under penalty of perjury:

            1.       I am a partner at SAKKAS & CAHN, LLP, attorneys for the plaintiff

YOLANDA BEJASA-OMEGA ("Mrs. Omega").

            2.       I am familiar with this case from my personal handling of it since its

inception.  I have done all major work associated with the case to date, including drafting the

pleadings, attending the various conferences and conducting the depositions.

                     **RELIEF  SOUGHT  BY  THIS  MOTION**

            3.       I submit this affirmation in support of the plaintiff's motion for summary

judgment on the issue of liability.  Plaintiff contends that there is no issue of fact for a jury to

resolve with regard to liability and that she is entitled to judgment as a matter of law.  The case

should proceed to a jury solely as to damages.

                     **EXHIBITS  ANNEXED  TO
                     THIS  AFFIRMATION**

            4.       The following exhibits are annexed to this affirmation:

| Exhibit "A" | *Summons* and *Verified Complaint* |
| Exhibit "B" | *Verified Answer* |
| Exhibit "C" | *Stipulation of Discontinuance Against Defendant PV Holding Corp.* |
| Exhibit "D" | Police Accident Report |
| Exhibit "E" | Omega Deposition Transcript |
| Exhibit "F" | Sklon Deposition Transcript |
| Exhibit "G" | Photos of Intersection Marked for Identification at Sklon Deposition |
| Exhibit "H" | Report of Robert Goldstein, M.D. (plaintiff's orthopedist) |
| Exhibit "I" | Report of Peter Godsick, M.D. (defendant's orthopedist) |

## N A T U R E   O F   T H E   C A S E

5.      This is a pedestrian knock down case.  On October 27, 2006 the plaintiff was walking to her work at the United Nations when she was struck by a rental vehicle being driven by the defendant RONALD SKLON ("Mr. Sklon").  At the time of the accident Mrs. Omega was crossing Second Avenue at its intersection with 44th Street.  She was walking in the crosswalk from the south-west corner to the south-east corner of the intersection.  Mr. Sklon was in the process of making a right hand turn from eastbound 44th Street to southbound Second Avenue when he hit Mrs. Omega, knocking her to the ground in the crosswalk.

## P R O C E D U R A L   H I S T O R Y

6.      This case was started in New York County Supreme Court and was removed to the Southern District by the then-defendant PV HOLDING CORP. ("PV Holding")

-2-

on the basis of diversity jurisdiction.  An initial scheduling conference was held and Mrs.

Omega and Mr. Sklon were deposed.  The parties exchanged the requisite paperwork,

authorizations, etc.

       7.     After depositions the plaintiff and defendant Mr. Sklon discontinued

their claims against defendant PV Holding, see exhibit "C" hereto.  49 USC §30106, which is

known as the "Graves Amendment", prohibits vicarious liability as to car renting and leasing

companies.  As such, New York's vicarious liability statute for motor vehicles, VTL §388, is

preempted by 49 USC §30106 and PV Holding could not be held vicariously liable as owner of

the vehicle that Mr. Sklon was driving when he hit Mrs. Omega.  PV Holding has tendered the

$25,000 insurance policy it is required to carry by New York's motor vehicle financial

responsibility law to the indemnity of Mr. Sklon.

       8.     It is submitted that the caption of this action should be amended now that

PV Holding is out of the case.  Your affirmant does not anticipate that Mr. Sklon's counsel

objects to this aspect of the motion.  The caption should be amended to read as follows:

-----------------------------------------------------------------------X

YOLANDA BEJASA-OMEGA,

                                Plaintiff,

                 -*v.*-

RONALD M. SKLON,

                              Defendant.

-----------------------------------------------------------------X

       9.     Prior to making this motion, your affirmant wrote a letter to Justice

Stanton advising that it was plaintiff's intention to bring the motion and requesting a pre-motion

conference.  A pre-motion conference was held.  Mr. Sklon's counsel advised that it was his

intention to oppose this motion on the grounds that Mrs. Omega was comparatively negligent.

## U N D I S P U T E D    F A C T S

10.    The following facts are undisputed:

• Mr. Sklon was the operator of a vehicle that struck Mrs. Omega.

• When Mr. Sklon's vehicle hit Mrs. Omega she was walking in the crosswalk from the south-west to the south-east corner of 44th Street and Second Avenue.

• When Mr. Sklon hit Mrs. Omega he was in the process of turning right from eastbound 44th Street to southbound Second Avenue.

• When Mrs. Omega entered the crosswalk the pedestrian crossing light was in her favor.

• When Mr. Sklon struck Mrs. Omega the pedestrian crossing light was in Mrs. Omega's favor.

• Mr. Sklon did not yield the right of way to Mrs. Omega.

## MRS.  OMEGA'S  ACCOUNT  OF  THE ACCIDENT

11.    Mrs. Omega was deposed on August 9, 2007.  The relevant portions of

her testimony are as follows.

12.    The accident occurred at about 8:30 AM on October 27, 2006.[1]  It happened at the intersection of 44th Street and Second Avenue in Manhattan.[2]  Her bus had dropped her off at 44th Street and Third Avenue and she was walking east to her job at the United Nations, located at 44th Street and First Avenue.[3]  As she proceeded east she was walking along the south side of 44th Street.  She was due at work at 9:00 AM.[4]  It was sunny[5] and the roads were dry and clear.[6]

13.    Mrs. Omega was familiar with the intersection where the accident occurred.[7]  She had been crossing the area for 19 years in working at the United Nations.[8]

14.    There is a "Walk/Don't Walk" light for pedestrians crossing Second Avenue at 44th Street.[9]  Mrs. Omega stopped at the south east corner of the intersection for "probably a second" before entering the crosswalk.[10]  She looked at the "Walk/Don't Walk"

---

[1] Omega deposition, exhibit "E", at page 6.

[2] Omega deposition, exhibit "E", at page 6.

[3] Omega deposition, exhibit "E", at page 7.

[4] Omega deposition, exhibit "E", at page 7.

[5] Omega deposition, exhibit "E", at pages 6 and 72.

[6] Omega deposition, exhibit "E", at page 72.

[7] Omega deposition, exhibit "E", at page 60.

[8] Omega deposition, exhibit "E", at page 61.

[9] Omega deposition, exhibit "E", at page 8.

[10] Omega deposition, exhibit "E", at page 8.

light before she began crossing Second Avenue.[11]  The sign indicated "Walk," so she proceeded to cross Second Avenue in the crosswalk.[12]  From the moment that Mrs. Omega first observed the pedestrian signal, it was always a steady "Walk."[13]

15.    As she was standing on the sidewalk before entering the crosswalk Mrs. Omega did not look to her left or her right.[14]  She cannot remember if she ever looked left or right at any point from entering the crosswalk, until she was hit.[15]

16.    Second Avenue is a one-way street, with all the traffic going southbound.[16]  44th Street is also one-way, in the eastbound direction.[17]  Mrs. Omega had crossed the first traffic lane and most of the second when she was hit.[18]  Later in the deposition she testified that she had crossed the first lane of traffic and was perhaps halfway into the second lane when she was hit.[19]

---

[11] Omega deposition, exhibit "E", at page 9.

[12] Omega deposition, exhibit "E", at page 9.

[13] Omega deposition, exhibit "E", at page 67.

[14] Omega deposition, exhibit "E", at page 68.

[15] Omega deposition, exhibit "E", at page 68.

[16] Omega deposition, exhibit "E", at page 9.

[17] Omega deposition, exhibit "E", at page 63.

[18] Omega deposition, exhibit "E", at page 10.

[19] Omega deposition, exhibit "E", at page 70.

17.    Mrs. Omega did not see the vehicle before it hit her.[20]  She did not see any cars making a right onto Second Avenue from 44th Street, for that matter.  The car struck her on her left side.[21]  She did not hear a horn or screeching tires or have any other sort of warning before she was hit.[22]  Right before she was hit Mrs. Omega was looking straight ahead, in the direction she was walking.[23]  She was hit by a white car.[24]  The impact with the car knocked Mrs. Omega to the street.[25]

18.    Mrs. Omega does not know what street the white car was on just before it hit her.[26]  However, when the white car hit her, it was facing southbound on Second Avenue.[27]

---

[20] Omega deposition, exhibit "E", at page 11.

[21] Omega deposition, exhibit "E", at page 11.

[22] Omega deposition, exhibit "E", at page 12.

[23] Omega deposition, exhibit "E", at page 12.

[24] Omega deposition, exhibit "E", at page 13.

[25] Omega deposition, exhibit "E", at page 13.

[26] Omega deposition, exhibit "E", at page 71.

[27] Omega deposition, exhibit "E", at page 71.

19.    The police responded to the accident.[28]  Mrs. Omega told the police that a car hit her.[29]  She saw the driver of the white car talking to the policeman, but did not hear what was being said.[30]

## MR. SKLON'S ACCOUNT OF THE ACCIDENT

20.    Mr. Sklon was deposed on August 24, 2007.  The relevant portions of his testimony are as follows.

21.    At the time of the Mr. Sklon was driving a Budget Rent-A-Car.[31]  He was in New York on a pleasure trip.[32]  He had just rented the car from a place at 49th Street and Eighth Avenue.[33]  From the car rental place Mr. Sklon proceeded across town, intending to take Second Avenue to the Midtown Tunnel to visit his daughter in East Meadow.[34]

---

[28] Omega deposition, exhibit "E", at page 16.

[29] Omega deposition, exhibit "E", at page 16.

[30] Omega deposition, exhibit "E", at page 16.

[31] Sklon deposition, exhibit "F", at page 7.

[32] Sklon deposition, exhibit "F", at page 7.

[33] Sklon deposition, exhibit "F", at page 7.

[34] Sklon deposition, exhibit "F", at pages 8-10.

22.    Mr. Sklon does not recall where he picked up 44th Street, but knew that he had been on it for a "few blocks" prior to the accident.[35]  He recalled the weather as being nice[36] and the ground was dry.[37]  He was familiar with the area where the accident occurred.[38]

23.    Mr. Sklon stopped for a red light on 44th Street at Second Avenue.[39]  It was his intention to make a right turn when the light went green so he could proceed southbound on Second Avenue.[40]  There were no vehicles in front of him as he waited at the light.[41]  He was in the right hand lane of 44th Street as he waited for the light, and there were no cars to his right.[42]  He waited about a minute for the light to go green for him.[43]

24.    The light went green for Mr. Sklon.[44]  He proceeded to make his turn from 44th Street to go southbound on Second Avenue.[45]  He hit a pedestrian, "Just as I was

---

[35] Sklon deposition, exhibit "F", at pages 8-9.

[36] Sklon deposition, exhibit "F", at page 9.

[37] Sklon deposition, exhibit "F", at page 11.

[38] Sklon deposition, exhibit "F", at page 9.

[39] Sklon deposition, exhibit "F", at page 10.

[40] Sklon deposition, exhibit "F", at page 10.

[41] Sklon deposition, exhibit "F", at pages 10-11.

[42] Sklon deposition, exhibit "F", at page 12.

[43] Sklon deposition, exhibit "F", at page 12.

[44] Sklon deposition, exhibit "F", at page 10.

[45] Sklon deposition, exhibit "F", at page 13.

turning to Second Avenue."[46]  From the light going green for Mr. Sklon to his impact with the

pedestrian, about 20 to 30 seconds had elapsed.[47]  When he hit her she was in the crosswalk,

about two steps off the curb.[48]

   25. Mr. Sklon first observed the lady as he was waiting for his red light.[49]  At

that moment she was standing on the sidewalk.[50]  Mr. Sklon kept the lady under his continual

observation from the moment he first saw her until the point of impact.[51]

   26. Here is Mr. Sklon's description of what the lady did as he observed her

before hitting her:

> Q: Could you describe for me what she did from
>
>   when you first saw her up to the point of impact?
>
> A: I started turning.  She was still on the curb, just as
>
>   I was about to finish the turn.  She stepped out in
>
>   front of me and I stopped.  I guess, we came in
>
>   contact.[52]

---

[46] Sklon deposition, exhibit "F", at page 13.

[47] Sklon deposition, exhibit "F", at page 15.

[48] Sklon deposition, exhibit "F", at page 15.

[49] Sklon deposition, exhibit "F", at page 16.

[50] Sklon deposition, exhibit "F", at page 16.

[51] Sklon deposition, exhibit "F", at page 16 and page 30.

[52] Sklon deposition, exhibit "F", at pages 16-17.

27.    Indeed Mr. Sklon claimed that he took particular care in keeping the lady under his constant observation and executing his turn because of a "strange look" that the lady on the corner had.  His testimony in that regard was as follows:

Q:    How many seconds elapsed from when you saw her move to the point of impact?

A:    Just a few.  I don't know exactly how many.

Q:    Was the pedestrian doing anything while she was on the sidewalk; talking on a cell phone, eating, smoking, anything like that?

A:    She was just looking around and that's what made me go a little bit slow around the curb because she was just standing there.

Q:    When you say she was looking around, did she appear to be looking for something in the sky or around her?

A:    Just had a strange look.  Like she wasn't sure where she was.  At least, that's the way I saw it.[53]

28.    To Mr. Sklon's observation the lady never appeared to see him at any point before the impact.[54]

---

[53] Sklon deposition, exhibit "F", at pages 31-32.

[54] Sklon deposition, exhibit "F", at page 33.

-11-

29.     Mr. Sklon hit the lady with his front bumper.[55]  The contact was "soft" and the lady "fell down" right in front of him.[56]

30.     Despite having the lady under his constant observation up to the point of impact, Mr. Sklon could not characterize the pace of her walking.  On this issue he testified as follows:

> Q:     How would you characterize her manner of
>
>        walking; was she walking in a normal pace,
>
>        running, walking slowly or something else?
>
> A:     I don't know.  She just walked right out in front of
>
>        me, in the middle of a turn.[57]

31.     In making the turn onto Second Avenue from 44th Street, Mr. Sklon was effectively making a 90 degree turn.[58]  When the impact occurred he was two-thirds of the way through his turn.[59]  Put differently, he had completed sixty degrees of his ninety degree turn.[60]

---

[55] Sklon deposition, exhibit "F", at page 18.

[56] Sklon deposition, exhibit "F", at page 19.

[57] Sklon deposition, exhibit "F", at page 20.

[58] Sklon deposition, exhibit "F", at page 20.

[59] Sklon deposition, exhibit "F", at page 20.

[60] Sklon deposition, exhibit "F", at page 21.

32.    At the point of impact Mr. Sklon's vehicle was "barely moving."[61]  When his car struck the lady, Mr. Sklon could see the lady's left side.[62]

33.    Mr. Sklon was shown a copy of the police report at his deposition.[63]  He received a copy of the police report "much later" after the accident.[64]

34.    The narrative section of the police report reads as follows: "Pedestrian states she was crossing Second Avenue on the south side of East 44th from west to east with the walk sign when vehicle number 1 attempting to turn south onto Second from eastbound 44th struck her.  Pedestrian was in crosswalk with walk sign.  Vehicle number 1 driver agrees to above story.  Stated light turned green and he attempted right turn.  Police officer did not witness."[65]

35.    Mr. Sklon did not object to the information contained in the narrative portion of the police report.[66]  However, it was "missing" his account that, "[] when I started turning, she was on the sidewalk and then she walked out in front of me.  I didn't realize she was going to cross the street."[67]

---

[61] Sklon deposition, exhibit "F", at page 21.

[62] Sklon deposition, exhibit "F", at page 22.

[63] Sklon deposition, exhibit "F", at page 25.

[64] Sklon deposition, exhibit "F", at page 25.

[65] Police Accident Report, exhibit "D".

[66] Sklon deposition, exhibit "F", at page 27.

[67] Sklon deposition, exhibit "F", at page 27.

-13-

36.    Mr. Sklon was shown 3 photographs of the intersection at his deposition. He was asked to identify and mark the location of the impact on any, or all, of the photos.[68]  He was only able to do so with the photograph marked as "plaintiff's 3" in which he duly marked the point of impact and placed his initials.[69]  The photo that Mr. Sklon marked is the last photo in exhibit "G" to these papers.  His marking is in black ink.  It consists of an "X" in a circle with his initials below.  Your affirmant put the red arrow on the photo to point out where the marking is located.

### MRS. OMEGA HAD THE RIGHT OF WAY OVER MR. SKLON AS THE WALK SIGNAL WAS IN HER FAVOR

37.    Within the boundaries of the City of New York the New York City Traffic Regulations are the law concerning vehicular and pedestrian traffic, not the New York State Vehicle and Traffic Law.  VTL §1642 provides that in any city with a population in excess of one million, the legislative body of the city may regulate vehicular and pedestrian traffic.  VTL §1642 further provides that whenever such local laws are inconsistent or in conflict with the VTL, the local laws shall supercede New York State Law.  See, VTL §1642(a)(10)[70].  In fact, it is error to charge a jury as to the VTL if the applicable law is found in the New York City Traffic Regulations.  See, Ferreira v. New York City Transit Authority, 79 A.D.2d 596, 433 N.Y.S.2d 508 (2nd Dept. 1980) (holding that the Supreme Court committed

---

[68] Sklon deposition, exhibit "F", at page 28.

[69] Sklon deposition, exhibit "F", at page 30.

[70] Authorizing municipal legislatures to regulate the right of way of vehicles and pedestrians.

reversible error in charging the jury as to the VTL when the applicable law for the case was contained within the New York City Traffic Regulations).

        38.      The New York City Traffic Regulations state that vehicular traffic must yield the right of way to pedestrians in a crosswalk when the "Walk" signal is in the pedestrian's favor.  34 RCNY §4-03, captioned "Traffic Signals" provides as follows:

> Pedestrian control signals.  Whenever pedestrian control signals are in operation, exhibiting the words "WALK" and "DON'T WALK" successively, the international green or red hand symbols, figures or any other internationally recognized representation concerning the movement of pedestrians, such signals shall indicate as follows:
>
> > (1)     WALK, green hand symbol or green walking figure.  Pedestrians facing such signal may proceed across the roadway in the direction of the signal in any crosswalk.  Vehicular traffic shall yield the right of way to such pedestrians.

        39.      By the same token, having the right of way does not give a pedestrian the right to jump in front of a vehicle such that it is impossible for an operator to yield.  34 RCNY §4-04, captioned "Pedestrians" provides as follows:

> (b) Right of way in crosswalks.
>
> > (1)     Operators to yield to pedestrians in crosswalk.  [Remainder omitted].
> >
> > (2)     Pedestrians shall not cross in front of oncoming vehicles. Notwithstanding the provisions of (1) of this subdivision (b), no

pedestrian shall suddenly leave a curb or other place of safety and

walk or run into the path of a vehicle which is so close that it is

impossible for the operator to yield.

**THERE IS NO CREDIBLE EVIDENCE BY WHICH A REASONABLE FACT FINDER COULD CONCLUDE THAT MRS. OMEGA WAS COMPARATIVELY NEGLIGENT**

40.    Mr. Sklon's counsel may argue there is a question of fact as to Mrs. Omega's alleged comparative negligence based upon her "suddenly" leaving the curb and walking or running into the path of Mr. Sklon's vehicle, such that it was "impossible" for him to yield, as contemplated by 34 RCNY §4-04(b)(2).

41.    However, Mr. Sklon's testimony fails to support that theory.  Simply put, there is nothing in Mr. Sklon's testimony supporting a sudden dart out by Mrs. Omega such that it was impossible for him to avoid hitting her.  Quite to the contrary, his testimony demonstrates that (1) had he been operating his vehicle in the manner he described, he would have never hit Mrs. Omega, and (2) to the extent that the collision was truly "impossible" to avoid (which it was not) it was a situation entirely of Mr. Sklon's creation as, by his own testimony, he was merely inches from mounting the curb as he negotiated his turn giving absolutely no latitude to any pedestrian who dismounted the curb.  Either way, Mr. Sklon's testimony makes absolutely clear any claim of "impossibility" is simply an unsupported contrivance.

42.    To recap Mr. Sklon's testimony: Mr. Sklon first observed Mrs. Omega as he was waiting for his red light to go green.  From the time that Mr. Sklon first observed Mrs.

-16-

Omega up to the point of impact he kept her under his "continual observation" concerned, as he was, about her "strange look."  Some 20 to 30 seconds passed from the light going green to the point of impact.  Despite having Mrs. Omega under his continual observation for that 20 to 30 seconds, Mr. Sklon could not describe whether she was walking slowly, running, or something else.  At the point of impact he was "barely moving" and the contact was "soft".

43.    As a quick aside, to your affirmant's knowledge Mr. Sklon's counsel does not dispute that the contact with Mr. Sklon's vehicle caused Mrs. Omega's orthopedic injuries.  Those injuries, contrary to Mr. Sklon's description of a "soft" contact, demonstrate a violent collision.  Mrs. Omega suffered an acute, displaced, oblique fracture of the left distal fibula extending to the talofibular syndesmosis, SE-IV equivalent.  Her ankle was so badly fractured that it required an open reduction, internal fixation using a 7 hole one-third tubular plate and screws.  Neither plaintiff's nor defendant's orthopedists disagree as to the diagnosis or causation of the orthopedic injuries.  See, exhibits "H" and "I" annexed hereto.

44.    Finally, Mr. Sklon described the point of impact as about two steps off the curb.  However, when provided with several photos of the crosswalk, Mr. Sklon could not identify the point of impact in the two photos with the most close up views of the crosswalk.  Rather he could only identify the point of impact from the photo showing the most distant view of the crosswalk.  In that photo he marked as the location of the impact a point which is just inches away from the curb, not two steps away has he had testified.

45.    Mr. Sklon's testimony entirely fails to describe an "impossible" to avoid collision attributable to a Mrs. Omega's sudden and unexpected departure from the curb.  34 RCNY §4-04(b)(2) sets forth the elements that must be proved to make out this affirmative

defense, namely: (1) no pedestrian shall **suddenly** leave a curb such that (2) it is **impossible** for the driver to yield.  Mr. Sklon's testimony makes out neither element.

46.    To begin with, Mr. Sklon never established that Mrs. Omega suddenly departed the curb.  Mr. Sklon had been observing her continuously from prior to the light turning green.  However, despite his constant observation of her, he could not even hazard a guess at her pace as she departed the curb, whether slow, fast or otherwise.

47.    Nor does Mr. Sklon's testimony make out that the collision was "impossible" to avoid.  Mr. Sklon was the first car in line waiting for the light to go green. There were no vehicles to his right as he waited.  When the light went green he commenced his right hand turn.  20 to 30 seconds passed from the light going green to the impact.

48.    Even if Mr. Sklon covered a distance of as much as 30 feet before the impact, his average speed would have been only 1 foot per second[71] - a pace consistent with his testimony that he was "barely moving" at the point of impact.  Simply put, no reasonable person can conclude that a vehicle moving a 1 foot per second cannot be stopped in time to avoid hitting a pedestrian that the operator has under their constant observation.  Giving Mr. Sklon every benefit of the doubt and taking his testimony as completely accurate and true he has utterly failed to demonstrate that this was an impossible to avoid collision attributable to Mrs. Omega's sudden departure from the curb.

49.    Finally, even assuming that Mr. Sklon has made out the elements of his 34 RCNY §4-04(b)(2) affirmative defense that Mrs. Omega suddenly departed the curb, making

---

[71] A pace of 1 foot per second translates to .68 miles per hour.  3.5 MPH is considered an average walking speed.

it impossible for him to avoid her (a claim that for which there is no credible evidence, as stated above), it is nonetheless obvious that if this was an impossible to avoid collision, the situation was entirely of Mr. Sklon's own creating. In the one photo that Mr. Sklon was able to mark as showing the location of the impact (the exact same location is visible in all three photos, and much clearer in the other two) he placed an "X" merely inches from the curb. If, in fact, he was driving that close to the curb, he gave absolutely no latitude to any pedestrian that stepped off the curb. By Mr. Sklon's own testimony it was his driving, not Mrs. Omega's walking, that made for an impossible to avoid collision.

50.     In that regard, this case is similar to <u>Kirchgaessner v. Hernandez</u>, 40 A.D.2d 437, 836 N.Y.S.2d 170 (1st Dept. 2007). In that case plaintiff's decedent was killed as she crossed in the crosswalk with the "Walk" signal in her favor from the northeast to the northwest corner of the intersection at 6th Avenue and 55th Street. A truck making a right hand turn from westbound 55th Street hit plaintiff's decedent with its rear wheels. The trucker's lawyer defended plaintiff's summary judgment motion claiming there was a question of fact as to plaintiff's decedent's comparative negligence, in that plaintiff's decedent had, "inattentively walked into a position of danger." The Supreme Court nonetheless granted the plaintiff's motion for summary judgment and the Appellate Division affirmed. In so doing the Appellate Division noted that it was the truck driver's actions that had "left the decedent without a reasonable opportunity to react and no outlet for escape."

51.     Mr. Sklon's defense in this case too amounts to a claim that the plaintiff had inattentively walked into a position of danger. However, like the trucker in <u>Kirchgaessner</u>, Mr. Sklon created the situation that caused the accident. By attempting to execute his turn mere

-19-

inches from the curb, if that is what occurred, Mr. Sklon left any pedestrian stepping off the curb without a reasonable opportunity to react and no outlet for escape.

52.    Mr. Sklon's account of this accident as being an impossible to avoid collision attributable to Mrs. Omega's sudden and unexpected departure from the curb is a contrivance by which he is attempting to avoid the consequences of admitting his liability to the police officer who took down the accident report.  Mr. Sklon made absolutely no mention of a "sudden" departure from the curb by Mrs. Omega to the police officer.  Nor did he describe the collision as "impossible" to avoid.  Rather he simply agreed with Mrs. Omega's account to the police officer that she was struck by a car in the crosswalk that didn't yield the right of way to her.

53.    In <u>Abramov v. Miral Corp.</u>, 24 A.D.3d 397, 805 A.D.2d 119 (2nd Dept. 2005) the defendant driver admitted to a police officer that he struck the plaintiff pedestrian in a crosswalk who had the right of way when he failed to observe the pedestrian and could not stop in time.  However, in defending against the pedestrian's summary judgment motion the defendant driver claimed the pedestrian was comparatively negligent because the pedestrian had recklessly walked into the side of his car.

54.    The Appellate Division, in affirming the Supreme Court's grant of summary judgment to the plaintiff, held that it was proper for the Supreme Court to consider the police report and the defendant's admission contained in it.  It further held that the defendant's attempt to blame the collision on the pedestrian walking into the side of his car was a "belated attempt to avoid the consequences of his earlier admission by raising a feigned issue which was insufficient to defeat the motion."

-20-

55.    Mr. Sklon is attempting a similar tactic in this case.  The police report contains an outright admission on his part that he failed to yield to a pedestrian in the crosswalk who had the right of way.  It offers no hint of an account blaming the pedestrian in any fashion for the accident.  Now, however, Mr. Sklon would have this Court believe that he was acting as an entirely reasonably prudent driver, traveling at a speed roughly one-fifth of a normal walking speed, when Mrs. Omega suddenly appeared in front of him making it impossible for him to avoid her.  Mr. Sklon could only offer that this account was "missing" from the police report.  It is submitted that Mr. Sklon's account of this as an impossible to avoid collision is also a belated attempt to avoid the consequences of his earlier admission by raising a feigned issue which is insufficient to defeat the motion, just like the defendant's account in the Abramov case.

56.    The vast weight of authority in pedestrian versus motor vehicle cases occurring in crosswalks holds that the pedestrian is entitled to summary judgment on the issue of liability.  See, Beamud v. Gray, ___ A.D.3d ___, 844 N.Y.S.2d 269 (1st Dept. 2007) (Holding plaintiffs made prima facie showing of entitlement to judgment as a matter of law by demonstrating they were in crosswalk with light in their favor and defendant struck them while making a left turn.  Defendant's unsupported speculation as to plaintiffs' alleged comparative negligence was insufficient to raise an issue of fact.); Razzaque v. Krakow Taxi, Inc., 238 A.D.2d 161, 656 N.Y.S.2d 208 (1st Dept. 1997) (Holding that trial court properly directed a verdict in plaintiff's favor given plaintiff's testimony that he entered the crosswalk when the light flashed "Walk" and he was hit.  There was no valid line of reasoning by which a jury could conclude the defendants were not negligent or plaintiff's negligence contributed to the accident.); Zabursky v. Cochran, 234 A.D.2d 542, 651 N.Y.S.2d 190 (2nd Dept. 1996) (Holding

-21-

that Supreme Court erred in denying pedestrian's motion for summary judgment on liability given undisputed evidence that plaintiff was in crosswalk with light in her favor when defendant struck her while making a left hand turn and defendant's view of crosswalk was unobstructed.); Jermin v. APA Truck Leasing Company, 237 A.D.2d 255, 655 N.Y.S.2d (2nd Dept. 1997) (Holding that plaintiff pedestrian was entitled to summary judgment on liability given undisputed evidence that plaintiff was in the crosswalk with the light in his favor and defendant driver admitted to police officer that light for him was red.  Further there was a lack of evidence to support the claim of comparative negligence on the part of the plaintiff.); Hoey v. City of New York, 28 A.D.717, 813 N.Y.S.2d 533 (2nd Dept. 2006) (Holding that plaintiff pedestrian was entitled to summary judgment given evidence that he was in crosswalk with light in his favor, looking straight ahead, when he was struck by defendant's bus.  Defendant failed to raise a question of fact as to plaintiff's alleged comparative negligence.); Milan v. Rose, 11 Misc.3d 1066(A), 816 N.Y.S.2d 697 (Sup. Ct. Kings Cty. 2006) (Holding that plaintiff a pedestrian struck in a crosswalk was entitled to summary judgment on liability as to defendant motorist that failed to stop at stop sign before the crosswalk.).

57.     This case falls squarely in line with the above cases.  The Appellate Division in the First and Second Departments have consistently granted summary judgment on liability to plaintiffs in pedestrian knockdown cases occurring in crosswalks if there is no dispute that the pedestrian had the right of way.  A mere claim of comparative negligence, especially one contrived to avoid the consequences of an earlier admission of liability, cannot suffice to defeat a plaintiff's motion.  It is difficult to conceive that Mrs. Omega was any more "comparatively negligent" than the plaintiffs in the above cited cases.

-22-

58.     There is one adverse case to mention.  In <u>Thoma v. Ronai</u>, 189 A.D.2d 635, 592 N.Y.S.2d 333 (1st Dept. 1993) the plaintiff pedestrian moved for summary judgment after being hit in the crosswalk by defendant's vehicle.  The Supreme Court denied the plaintiff's motion and the Appellate Division, in a split decision, affirmed.  The Appellate Division decision notes that the plaintiff's pleadings significantly contradicted her sworn deposition testimony as to how the accident occurred, which is not the case here.  Nonetheless, in affirming the denial of the summary judgment motion the Appellate Division held that there was an issue of comparative negligence for the jury to resolve in light of the plaintiff's failure to observe the car that hit her.

59.     If this Court is to follow the decision in <u>Thoma</u>, this motion should be denied.  <u>Thoma</u>, however, stands alone in its holding.  It simply cannot be reconciled with the abundance of more recent, and more thoroughly reasoned, case law holding that in pedestrian versus vehicle crosswalk cases, if there is undisputed evidence that the defendant motorist failed to yield the right of way to the pedestrian, the pedestrian is entitled to summary judgment.

60.     Finally, it is submitted that the cases granting plaintiffs summary judgment in crosswalk cases for a vehicle's failure to yield the right of way are consistent with the New York City Traffic Regulations, whereas the holding in <u>Thoma</u> is not.  The New York City Traffic Regulations (34 RCNY §4-03(c)(1) and 34 RCNY §4-04(b)(1)) are unequivocal that a pedestrian in a crosswalk with the "Walk" signal in their favor has the absolute right of way.  It is not a right of way contingent on the pedestrian looking in any particular direction, or taking any other action besides insuring that the signal has turned to their favor.  If New York

-23-

City's municipal legislature wished to limit the pedestrian's right of way, the statute enacted could have read: "Pedestrians facing such a signal may proceed across the roadway in the direction of the signal in any crosswalk, upon looking for oncoming traffic."

61.    Our legislature, however, chose instead to make the right of way of the pedestrian absolute over vehicles in a crosswalk, provided the pedestrian has a "Walk" signal. Any holding obligating a pedestrian to check for oncoming traffic even with the walk signal in their favor, limits the rights of the pedestrian in a manner not intended by the legislature.

**WHEREFORE**, for the foregoing reasons it is respectfully submitted that this Court should make and enter an order pursuant to FRCP 56(a) granting the plaintiff summary judgment on the issue of liability, amending the caption of this action so as to accurately reflect the status of the parties and granting any such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 19, 2007

SAKKAS & CAHN, LLP

By: _____

MATTHEW SAKKAS, ESQ. (WMS 3351)
Attorney for Plaintiff
150 Broadway, Suite 1307
New York, N.Y. 10038
Tel:    (212)693-1313
Fax:    (212)693-1314

-24-

## AFFIRMATION OF SERVICE

MATTHEW SAKKAS, an attorney duly admitted to practice law before this Court, affirms to the truth of the following under penalty of perjury: I am not a party to this action, I am over 18 years of age and I reside in New York, New York.

On December 19, 2007 I mailed a copy of the within ***NOTICE OF MOTION*** and ***AFFIRMATION OF MATTHEW SAKKAS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY*** to the persons or firms listed below at the following addresses:

> MONTFORT, HEALY, MCGUIRE & SALLEY
> Attorneys for Defendant RONALD M. SKLON
> Attn.:  Hugh Larkin
> 1140 Franklin Avenue
> P.O. Box 7677
> Garden City, NY  11530-7677

by enclosing a copy of same in a postpaid properly addressed envelope and depositing said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

-25-

Dated:  New York, New York
        December 19, 2007

                                    S A K K A S   &   C A H N ,   L L P


                              By:  _____
                                   MATTHEW SAKKAS, ESQ. (WMS 3351)
                                   Attorney for Plaintiff
                                   150 Broadway, Suite 1307
                                   New York, N.Y.  10038
                                   Tel:    (212)693-1313
                                   Fax:    (212)693-1314

-26-

UNITED STATES DISTRICT COURT                 Docket No.:      07 Civ. 2950 (LLS)
SOUTHERN DISTRICT OF NEW YORK                Justice:        Hon. Louis L. Stanton

YOLANDA BEJASA-OMEGA,

                                   Plaintiff,

              -v.-

PV HOLDING CORP. and RONALD M. SKLON,

                                   Defendants.

## N O T I C E   O F   M O T I O N

### AFFIRMATION OF MATTHEW SAKKAS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY

### SAKKAS & CAHN, LLP
Attorney for Plaintiff
150 Broadway, Suite 1307
New York, N.Y.  10038
Tel:(212)693-1313
Fax:(212)693-1314

TO:

MONTFORT, HEALY, MCGUIRE & SALLEY
Attorneys for Defendant RONALD M. SKLON
Attn.:  Hugh Larkin
1140 Franklin Avenue
P.O. Box 7677
Garden City, NY  11530-7677