UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

YOLANDA BEJASA-OMEGA,

                                          Plaintiff,

-v.-

PV HOLDING CORP. and RONALD M. SKLON,

                                         Defendants.

Docket No.:     07 Civ. 2950 (LLS)
Justice:       Hon. Louis L. Stanton

***AFFIRMATION OF MATTHEW SAKKAS IN REPLY TO DEFENDANT'S OPPOSITION TO THE SUMMARY JUDGMENT MOTION***

-----------------------------------------------------------------------X

        MATTHEW SAKKAS, an attorney duly admitted to practice law before this Court, affirms to the truth of the following, under penalty of perjury:

        1.      I am a partner at SAKKAS & CAHN, LLP, attorneys for the plaintiff YOLANDA BEJASA-OMEGA ("Mrs. Omega").

        2.      I submit this affirmation in response to defendant's opposition to plaintiff's motion for summary judgment on the issue of liability.

**A PEDESTRIAN'S RIGHT OF WAY IN A CROSSWALK IS ABSOLUTE - A VEHICLE IN THE CROSSWALK MUST YIELD IF IT IS ABLE TO DO SO**

        3.      To begin with, your affirmant and Mr. Sklon's counsel have a very sharp disagreement as to the law.  It is your affirmant's position that a pedestrian's right of way in a crosswalk is absolute.  That is, if a pedestrian is crossing in a crosswalk with the "Walk" signal in her favor, any vehicle in the crosswalk must yield to the pedestrian if it is possible to do so. The right of way is not contingent on who entered the crosswalk first - vehicles must yield to pedestrians.  There is no condition to this rule.

4.    34 RCNY §4-04(b)(1) states the law plainly: "Operators to yield to pedestrians in crosswalk."  It offers no conditions to the rule and no circumstances in which a vehicle has the right of way over a pedestrian in a crosswalk, when the pedestrian has the "Walk" signal.

5.    While 34 RCNY §4-04(b)(2) makes clear that pedestrians cannot put themselves in a position where it is impossible for a motorist to yield, this does not shift the right of way to the vehicle.  The situation of "impossibility" described in 34 RCNY §4-04(b)(2) is simply a matter of common sense - although pedestrians in a crosswalk have the right of way, they cannot throw themselves before moving vehicles.  If, for example, a pedestrian does walk or run into a crosswalk with the "Walk" signal in their favor and **it is possible** for a vehicle already in the crosswalk to stop, it must do so.

6.    Mr. Sklon's counsel has a much different, and more radical, view of the law of right of way in crosswalks.  Mr. Sklon's counsel maintains that the right of way goes to the first to enter the crosswalk.  He writes:

> The misnomer that is commonly held is that pedestrians automatically receive the right of way.  It is respectfully submitted that this is incorrect.  When vehicles and pedestrians both have the green signal, a vehicle will have the right of way over a pedestrian when the pedestrian is located at a place of safety, such as a sidewalk, and the vehicle is already in or at the crosswalk.

7.    As support, Mr. Sklon's counsel cites 34 RCNY §4-04.  As already discussed, the text of 34 RCNY §4-04 is clear and unequivocal: pedestrians crossing with a "Walk" signal in the crosswalk have the right of way without condition. Even if a pedestrian steps in front of a vehicle in a crosswalk, the vehicle must stop if it can do so.

8.     Mr. Sklon's counsel also cites <u>Brito v. Manhattan and Bronx Surface Operating Authority</u>, 188 A.D.2d 253, 590 N.Y.S.2d 450 (1ˢᵗ Dept. 1992) as authority for the proposition that a vehicle in a crosswalk can have the right of way over a pedestrian.

9.     In that case the plaintiff was found lying in a crosswalk, apparently having been run over by the rear wheels of defendant's bus that had just made a right turn through the crosswalk.  The pedestrian suffered brain damage and was unable to testify.  A witness described seeing a bag of crushed groceries next to the plaintiff with food smeared in the direction the bus had just made its turn.  Food was found on the rear wheels of the bus as well.  No witness was able to say when the plaintiff entered the crosswalk, or the color the light when she entered.

10.     After a verdict and judgment for the plaintiff the Appellate Division reversed and remanded the case for a new trial.  The trial court had charged the jury that vehicular traffic turning right must yield the right of way to pedestrians "lawfully within the intersection or an adjacent crosswalk at the time the green light is exhibited."  In so doing the Appellate Division noted that the trial court had assumed a critical fact which was unduly prejudicial to defendant's case.  No witness had placed the plaintiff in the crosswalk with the light in her favor, though the trial court's charge assumed that to be the case.

11.     <u>Brito</u> is a case dealing with proof of a circumstantial case.  Its holding is limited to the unique circumstance in which a plaintiff was apparently hit by the rear wheels of a bus, but there was no proof as to precisely how that occurred.  <u>Brito</u> certainly does not stand for the proposition that the bus driver was accorded the right of way over the plaintiff-pedestrian if she had entered the crosswalk with the signal in her favor.

12.     To be perfectly clear, Sklon's counsel is arguing to this Court that Mr. Sklon, not Mrs. Omega, had the right of way in the crosswalk, based upon his assertion that he entered the crosswalk before she did.  If this was really the law one can only imagine the mayhem that would result in the intersections of New York City.  Every green light would set off a race to enter the crosswalk with the victor gaining the right of way.  A pedestrian losing the right of way would have to defer to any vehicle that beat them into the crosswalk.  The vehicle winning the race into the crosswalk would not have to yield to a pedestrian, even were it entirely possible to do so.

13.     This scene of chaos, fortunately, is not a reality in the streets of New York because as every motorist and every pedestrian knows, pedestrians in the crosswalk have the right of way.  This doesn't give pedestrians the right to jump in front of moving vehicles, but it does require motorists to yield to pedestrians who are in the crosswalk with the signal in their favor.

14.     It is submitted that Mr. Sklon's counsel must take the untenable position that Mr. Sklon had the right of way, as he has entirely failed to demonstrate that this was an "impossible" to avoid collision.  Sklon's counsel concedes that this case is not a question of a "dart out."  Affirmation of Hugh Larkin at ¶10.  Moreover, Mr. Sklon never offers proof demonstrating the impossibility of avoiding the collision.  Indeed, Mr. Sklon's own account of the accident - that it was 20 to 30 seconds from his light going green to impact, the entire time during which he kept Mrs. Omega under his "continual observation" while traveling at a speed barely one-fifth normal walking speed - demonstrates that the collision was entirely avoidable.

-4-

15.    If Mr. Sklon cannot offer credible evidence to establish that the collision was impossible to avoid, his only resort is to convince this Court that he had the right of way, which he did not.

16.    Sklon's counsel cites Domanova v. State of New York, 41 A.D.3d 633, 838 N.Y.S.2d 644 (2nd Dept. 2007) apparently for the proposition that a pedestrian walking in the crosswalk can be held comparatively negligent.  In that case a Court of Claims judge, acting as judge and finder of fact, entered a defendant's verdict for the State of New York as employer of a vehicle driver that struck a plaintiff within a crosswalk.  The Appellate Division, reviewing the verdict de novo, reversed the trial court and remanded the case for a new trial, while refusing to enter judgment 100% in favor of plaintiff.  The decision is very sparse on the facts. There is no indication in the decision that the pedestrian was crossing with a "Walk" signal in her favor.  Moreover the driver in that case claimed he never saw the plaintiff, a claim Sklon does not make in this case.

17.    Domanova is a peculiar case limited to its facts.  The Appellate Division in that case certainly offered no broad holdings indicating that a finding of comparative negligence on the part of a pedestrian was somehow mandated.  Virtually all recent cases from the Appellate Division, all of which were discussed at length in your affirmant's moving papers, have uniformly held that a pedestrian struck in a crosswalk is entitled to summary judgment if it is undisputed that the pedestrian had the crossing signal in their favor.

18.    If Domanova was sparse on its facts, then Parnes v. Mitzy Transportation, 44 A.D.3d 918, 843 N.Y.S.2d 518 (2nd Dept. 2007), also relied on by Sklon's counsel, is positively barren.  All one can tell from the Parnes decision is that the Supreme

Court erred in granting a plaintiff summary judgment in some type of case. Nothing in the decision indicates that the case was a pedestrian-vehicle accident, that it occurred in a crosswalk, or anything else as to how the accident took place. It is impossible to see how any aspect of the <u>Parnes</u> decision could indicate that there is an issue of fact as to Mrs. Omega's alleged comparative negligence in this case.

19.    Sklon's counsel cites <u>Larsen v. Spano</u>, 35 A.D.3d 820, 827 N.Y.S.2d 276 (2nd Dept. 2006) as support for the proposition that Mrs. Omega may be held comparatively negligent. That case did not involve, as this one does, a pedestrian crosswalk controlled by "Walk/Don't Walk" signals. Rather in <u>Larsen</u>, the defendant approached an intersection from a westerly direction controlled by a "Yield" sign, intending to merge into traffic in a northerly direction. As the defendant motorist looked to her left to complete her merge the plaintiff stepped off a sidewalk into the path of the defendant and was struck. After a jury verdict finding the defendant free of negligence, the Appellate Division reversed, finding that such a verdict could not have been reached on a fair interpretation of the evidence.

20.    In <u>Larsen</u> the Appellate Division held that the respective negligence of the parties was a factual question for the jury. However, the facts of <u>Larsen</u> are not the facts of this case. <u>Larsen</u> involved an intersection controlled by a "Yield" sign and there is no indication that pedestrian traffic at that intersection was controlled by "Walk" signal, or that it was permitted at all for that matter. Cases dealing with pedestrian crosswalks controlled by "Walk" signal have been cited by your affirmant in the moving papers and those cases have uniformly held that the plaintiff is entitled to summary judgment if it is undisputed that the signal was in the pedestrian's favor.

-6-

21.     Finally, your affirmant takes issue with Sklon's counsel's contention that there is no conflict between Mr. Sklon's account of the accident to the police officer that took the official police report and the account he offered during his deposition.  In describing the accident to the police officer Mr. Sklon agreed with Mrs. Omega that the "Walk" signal was in her favor and offered nothing but that he struck her as he was making a right hand turn.  Mr. Sklon's account to the police officer was nothing short of an unconditional admission of his fault with no attempt to blame Mrs. Omega in any fashion.

22.     However, at deposition an entirely new and different account of the accident emerged.  Mr. Sklon now claimed that he was operating his vehicle at a speed of roughly 1 foot per second, all the while "continuously observing" a pedestrian that he had cause to be concerned about, given a "strange" look that she had about her.  He further claimed that the pedestrian stepped out in front of him (while never claiming that she darted out or that the collision was impossible to avoid).  Mr. Sklon testified that his full account of the accident was "missing" from the written police report.

23.     Mr. Sklon's counsel claims that allegation of a feigned issue is a "nonstarter" because there really is no conflict in Mr. Sklon's various accounts of the accident. The disparity between the police report and Mr. Sklon's deposition testimony is patent and it is Mr. Sklon's burden to reconcile them, if that is possible.

24.     If Mr. Sklon intended to reconcile his deposition testimony and the accident report by claiming the police officer neglected to write down what Mr. Sklon told him, he could easily say that.  However, he has not offered that, or any other explanation for the striking disparity between the accident report and his deposition testimony.  It is submitted that

it is not your affirmant's or this Court's obligation to search for a means to reconcile Mr. Sklon's testimony and his statement to the police officer.  What remains at this point is Mr. Sklon's admission of liability to the police officer and his incomprehensible and patently ridiculous effort to retract that admission at his deposition.

        25.    It is submitted that this Court should reject Mr. Sklon's attempt to raise a question of fact as to Mrs. Omega's comparative negligence based upon a feigned issue.  His testimony is incredible as a matter of law; it flatly contradicts what he told the police officer and it fails to raise a question of fact, even if it were to be believed.

        **WHEREFORE**, for the foregoing reasons it is respectfully submitted that this Court should make and enter an order pursuant to FRCP 56(a) granting the plaintiff summary judgment on the issue of liability, amending the caption of this action so as to accurately reflect the status of the parties and granting any such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        January 11, 2008

                                         S A K K A S  &  C A H N,  L L P

By: _____
                 MATTHEW SAKKAS, ESQ. (WMS 3351)
                 Attorney for Plaintiff
                 150 Broadway, Suite 1307
                 New York, N.Y.  10038
                 Tel:    (212)693-1313
                 Fax:    (212)693-1314

**AFFIRMATION OF SERVICE**

MATTHEW SAKKAS, an attorney duly admitted to practice law before this Court,

affirms to the truth of the following under penalty of perjury: I am not a party to this action, I

am over 18 years of age and I reside in New York, New York.

On January 11, 2008 I mailed a copy of the within **_NOTICE OF MOTION_** and

**_AFFIRMATION OF MATTHEW SAKKAS IN REPLY TO DEFENDANT'S OPPOSITION_**

**_TO THE SUMMARY JUDGMENT MOTION_** to the persons or firms listed below at the

following addresses:

> MONTFORT, HEALY, MCGUIRE & SALLEY
> Attorneys for Defendant RONALD M. SKLON
> Attn.:  Hugh Larkin
> 1140 Franklin Avenue
> P.O. Box 7677
> Garden City, NY  11530-7677

by enclosing a copy of same in a postpaid properly addressed envelope and depositing said

envelope in an official depository under the exclusive care and custody of the U.S. Postal

Service within New York State.

Dated: New York, New York
       January 11, 2008

S A K K A S   &   C A H N ,   L L P

By: _____

MATTHEW SAKKAS, ESQ. (WMS 3351)
Attorney for Plaintiff
150 Broadway, Suite 1307
New York, N.Y.  10038
Tel:    (212)693-1313
Fax:   (212)693-1314

UNITED STATES DISTRICT COURT      Docket No.:      07 Civ. 2950 (LLS)
SOUTHERN DISTRICT OF NEW YORK      Justice:      Hon. Louis L. Stanton

YOLANDA BEJASA-OMEGA,

Plaintiff,

*-v.-*

PV HOLDING CORP. and RONALD M. SKLON,

Defendants.

### *AFFIRMATION OF MATTHEW SAKKAS IN REPLY TO DEFENDANT'S OPPOSITION TO THE SUMMARY JUDGMENT MOTION*

## *SAKKAS & CAHN, LLP*
Attorney for Plaintiff
150 Broadway, Suite 1307
New York, N.Y.  10038
Tel:(212)693-1313
Fax:(212)693-1314

TO:

MONTFORT, HEALY, MCGUIRE & SALLEY
Attorneys for Defendant RONALD M. SKLON
Attn.:  Hugh Larkin
1140 Franklin Avenue
P.O. Box 7677
Garden City, NY  11530-7677